IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRADLEY O. WHYTE, and BRADLEY
O. WHITE, CRNA, PC,

      Plaintiffs,

   v.

PRAESTANTIA ASSOCIATES LLC,
a domestic limited liability
company; MARCUS BERGEN,
MICHAEL R. WRAY, and JAMIE
COBB, individuals; and MARCUS
BERGEN PC, MICHAEL WRAY PC,
and JAMIE COBB PC, domestic
professional corporations,

      Defendants.

Civ No. 08-1267-AA
OPINION AND ORDER

_____

Craig A. Crispin
Crispin Employment Lawyers
500 Plaza West
9600 S.W. Oak Street
Portland, OR  97223
    Attorney for plaintiffs

Michael K. Kelley
Shay S. Scott
Haglund Kelley Horngren Jones & Wilder LLP
1800 One Main Place
101 S.W. Main Street
Portland, OR 97204
    Attorneys for defendants

1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiffs Bradley O. Whyte (Whyte) and Bradley O. Whyte PC (Whyte PC) filed suit alleging race discrimination in violation of 42 U.S.C. § 1981 and Or. Rev. Stat. § 659A.030, intentional interference with economic relations, intentional interference with prospective economic relations, breach of the covenant of good faith and fair dealing, and defamation. Specifically, plaintiffs allege that defendants removed Whyte PC from their medical group and interfered with Whyte's future employment prospects because of his race. Defendants now move for summary judgment.

BACKGROUND

Whyte is a black man of Jamaican descent and a certified registered nurse anesthetist (CRNA). In January 2006, Whyte - through his professional corporation, Whyte PC - joined defendant Praestantia Associates LLC (Praestantia) as a full member.

Defendant Bergen originally formed Praestantia as a single member/manager LLC to provide anesthesia services to hospitals, ambulatory surgery centers, physicians, and others.

In December 2005, Praestantia was awarded a Professional Services Agreement for Anesthesia Services (Agreement) with Providence Newberg Hospital in Newberg, Oregon. The contract term was for three years, beginning January 1, 2006, during which time the hospital agreed to engage Praestantia for anesthesia services on an exclusive basis. Praestantia agreed to designate one of its

members as anesthesia manager to coordinate services to the hospital's surgical suites, procedure and recovery rooms, and other departments. The Agreement provided that Praestantia and each of its anesthesia members were independent contractors.

Bergen was the anesthesia manager. To fulfill Praestantia's duties under the Agreement, he recruited three other CRNAs - Whyte, Cobb, and Wray - to join Praestantia through their professional corporations. Bergen asserts that he knew Whyte was a person of color when Whyte was asked to join Praestantia. Plaintiffs dispute the assertion that Whyte was "recruited" and instead maintain that Whyte was recommended to Bergen by a mutual acquaintance and colleague, and that Bergen interviewed Whyte by telephone and was unaware of his race.

Effective January 31, 2006, Praestantia's Operating Agreement was amended to include the professional corporations of Whyte, Cobb, and Wray. Each member owned a portion of the LLC and maintained its own malpractice insurance. Under the Amended Operating Agreement, Praestantia's Director possessed the authority to remove any member if deemed appropriate in his "sole discretion," and the sole remedy for removal was return of the member's capital contribution. Bergen was named as Director.

In November or December 2007, Bergen decided to remove Whyte PC from membership in Praestantia, effective December 1, 2007, and Praestantia returned plaintiffs' capital contribution. Bergen

3 - OPINION AND ORDER

first presented Whyte with a separation agreement based on "unsatisfactory work performance and professional concerns." Bergen Decl., Ex. E.    Bergen subsequently presented a second separation agreement "[d]ue to issues known to you."  Id. Ex. F. Bergen asserts that the removal was based on Whyte's deteriorating professionalism, clinical complaints, compromised patient care, lack of communication, lack of responsiveness, lapses of judgment, and complaints of sexual misconduct asserted by female hospital staff.  Whyte denies these allegations.

After Whyte PC was removed from Praestantia, Bergen became aware of additional instances of explicit sexual harassment by Whyte toward several female hospital staff members.  Bergen states that had he known the severity of the complaints, he would have sought Whyte PC's removal from Praestantia earlier.  Whyte denies these allegations and asserts that his race was the sole motivating factor in his removal from Praestantia.

Sometime after Whyte PC's removal, Bergen was contacted by Providence St. Vincent Medical Center regarding Whyte's credentialing application.  The parties dispute whether Bergen provided the information that was requested.

<u>STANDARD</u>

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

4 - OPINION AND ORDER

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).    The materiality of a fact is determined by the substantive law on the issue.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  Id. at 324.  A fact issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  T.W. Elec., 809 F.2d at 630.  However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony.  Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

DISCUSSION

A.  Race Discrimination

Plaintiffs allege race discrimination against all defendants

under 42 U.S.C. § 1981 and against Praestantia under Or. Rev. Stat. § 659A.030. Defendants move for summary judgment, arguing that plaintiffs do not establish a prima facie case of race discrimination, and that Whyte PC was removed from Praestantia membership for legitimate and non-discriminatory reasons relating to Whyte's declining performance and misconduct involving female hospital staff.

Section 1981 "prohibits racial discrimination in the making and enforcement of private contracts." Runyon v. McCrary, 427 U.S. 160, 168 (1976). A successful § 1981 claim requires proof of discriminatory intent. Firefighters Local Union No. 1784 v. Stotts, 467 U.S. 561, 583 n.16 (1984); El-Hakem v. BJY Inc., 415 F.3d 1068, 1073 (9th Cir. 2005) (§ 1981 was intended to protect persons subjected to "intentional discrimination" based on their race or ethnicity). Plaintiffs concede they have no direct evidence of discrimination. Plaintiffs cite no comment, either written or spoken, made by any defendant to any person that disparaged or referenced Whyte's race or color. Further, Whyte could identify no overt discriminatory conduct by plaintiffs, and no other person or hospital staff member observed actions or heard actions that were discriminatory. Kelley Decl., Ex. A (Whyte Depo., pp. 63-66, 115); Second Kelley Decl., Ex. A (Whyte Depo., pp. 11, 12-14).

In the absence of direct evidence of discriminatory animus,

6 - OPINION AND ORDER

plaintiffs may establish discriminatory intent under the Title VII McDonnell Douglas burden-shifting scheme.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-803 (1973); Metoyer v. Chassman, 504 F.3d 919, 930 (9th Cir. 2007) ("a claim under § 1981 follows the same legal principles as those applicable in a Title VII case").  Under this approach, plaintiffs bear the initial burden of establishing a prima facie case of discrimination.  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas, 411 U.S. at 802.[1]  Plaintiffs must show that: 1) Whyte belonged to a protected class; 2) Whyte was qualified for his job; 3) Whyte was subjected to an adverse employment action; and 4) similarly situated employees not in Whyte's protected class received more favorable treatment, or other circumstances surrounding the adverse employment action "give rise to an inference of discrimination."  Burdine, 450 U.S. at 253; see also McDonnell Douglas, 411 U.S. at 802; Kang v. U. Lim Am., Inc., 296 F.3d 810, 818 (9th Cir. 2002).  If plaintiffs present a prima facie case, the burden shifts to defendants to articulate legitimate, nondiscriminatory reasons for plaintiffs' removal from Praestantia.  Burdine, 450 U.S. at 253.  If defendants do so, the burden shifts back to plaintiffs to show that defendants' reasons

---

[1]Though Oregon courts have not adopted the burden-shifting analysis under McDonnell Douglas or Burdine, plaintiffs must establish a prima facie case of discrimination to support their state law claim under Or. Rev. Stat. § 659A.030.  See Henderson v. Jantzen, Inc., 79 Or. App. 654, 657-58, 719 P.2d 1322 (1986).

are pretextual.  Id.

"The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." Chuang v. Univ. of Calif. Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994)).  At the same time, "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment." Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988).

Upon careful review of the record, I find that plaintiffs fail to produce any evidence, aside from Whyte's own conclusory statements, permitting an inference that plaintiffs' removal from Praestantia membership was motived by racial animus.  Notably, plaintiffs' devote the majority of their arguments to disputing the accuracy of underlying events relied on by Bergen in removing Whyte PC from Praestantia.  However, before the court considers defendants' proffered non-discriminatory reasons, the initial burden rests with plaintiffs to establish a prima facie case of discrimination.  While Whyte was a member of a protected class, was arguably qualified for his position, and suffered an adverse employment action, plaintiffs fail to produce a shred of evidence that he was treated differently from other Praestantia members, or that the circumstances surrounding his removal otherwise give rise

to an inference of discrimination.

Whyte's deposition testimony and declaration are replete with conclusory allegations of unfair treatment and discrimination; however, there is an absence of factual support for his assertions. In fact, Whyte's testimony contradicts many of his allegations. For example, in his declaration Whyte contends that he was not "recruited," "befriended," or "welcomed" by any of the individual defendants, that no individual defendant lived in Newberg, and that Bergen was unaware of Whyte's race before offering him membership in Praestantia.  Whyte Decl., pp. 2-3.  However, Whyte's sworn deposition testimony rebuts each of these assertions.  Whyte admitted that he was recruited, that he considered Cobb and Wray friends, that Cobb lived in the same Newberg neighborhood, and that he engaged in social events with Wray and Cobb, such as meeting Wray in Seattle and going skiing with Cobb.  Kelley Decl., Ex. A (Whyte Depo., p. 178-79); Second Kelley Decl., Ex. A (Whyte Depo., pp. 185, 186, 197-98).  Whyte also testified that Bergen met him and was aware of his race before joining Praestantia.  Second Kelley Decl., Ex. A (Whyte Depo., p. 180); see also Second Bergen Decl., p. 2.  Plaintiffs cannot create a genuine issue of fact by submitting a declaration that conflicts with Whyte's sworn deposition testimony.  Nelson v. City of Davis, 571 F.3d 924, 927 (9th Cir. 2009).

Whyte also asserts that defendants treated him as though "he

should consider it a privilege to work with them," but provides no specific factual assertion to support this statement. Whyte Decl., p. 3. Whyte further states that although he "worked harder" and was "more skilled" than any of the individual defendants, he was "met with efforts to keep his income down" so he would not earn more than individual defendants. Id. Again, Whyte provides no factual support for these assertions and states that he willingly offered to cover more procedures and earned more as a result. Kelley Decl., Ex. A (Whyte Depo., p. 35); Plaintiffs' Opposition, p. 4. The record reflects that Whyte PC earned more than other Praestantia members during his tenure, and no evidence supports Whyte's statement that defendants attempted to curtail his earnings. Second Bergen Decl., p. 5; Kelley Decl., Ex. A (Whyte Depo., p. 35). Though Whyte testified that Bergen proposed a revised reimbursement plan, it was not implemented during Whyte's tenure. Second Kelley Decl., Ex. A (Whyte Depo., p. 11-12).

Plaintiffs also argue that defendants required Whyte to take the most difficult cases that "other members could not handle," relegated him to unfavorable schedules, and required him to cover calls for other members. Plaintiffs' Opposition, p. 6.[2] Plaintiffs offer no factual evidence of any individual member's schedule to substantiate this assertion, and - as explained above - Whyte's

---

[2]These allegations are not contained in Whyte's Declaration.

deposition testimony contradicts it.  Whyte testified that both he
and Cobb were asked to cover calls more frequently, because they
lived closer to Providence Newberg Hospital than Bergen or Wray
did.[3]  Second Kelley Decl., Ex. A (Whyte Depo., p. 197-98).  Thus,
plaintiffs do not show that Whyte was singled out or treated
differently in terms of scheduling or covering calls.

Whyte also asserts that defendants did not treat him as an
equal member and held meetings without him.  Whyte Decl., p. 3.
However, Whyte testified that was a member of Praestantia with
equal voting rights, and that he was informed of meetings conducted
on behalf of Praestantia.  Second Kelley Decl., Ex. A (Whyte Depo.,
p. 19-20).  Minutes of Praestantia meetings further reflect that
Whyte was present at all meetings and participated in discussions.
Second Bergen Decl., pp. 5-6 and Ex. A.    Nonetheless, Whyte
testified that he believed he was excluded from a meeting regarding
Wray's membership.  Id. Ex. A (Whyte Depo., p. 14).  However,
plaintiffs present no evidence that Whyte was approved as a member
prior to Wray, or that Whyte was excluded from a meeting involving
Wray's membership.    To the contrary, Praestantia's Amended
Operating Agreement reflects that Whyte and Wray became members

---

[3]Bergen also states that the anesthesia work schedule is
prepared months in advance and identifies who is on-call and who
is scheduled for elective surgeries.  Bergen explains that
because the patients, cases, and physicians are not finalized
until the night prior to surgery, it would be impossible to
"cherry-pick" lengthy, lucrative, or interesting cases.  Second
Bergen Decl., p. 3.

11 - OPINION AND ORDER

together.  Bergen Decl., Ex. B.

Whyte also testified that a conversation with Cobb bolstered his belief that he was excluded from meetings.  Apparently, Whyte and Cobb were walking in their neighborhood when Cobb told Whyte that he was "under a microscope," information Whyte believed was discussed among Bergen, Cobb, and Wray.  Second Kelley Decl., Ex. A (Whyte Depo., p. 19).  Again, plaintiffs provide no factual support for this assertion, aside from Whyte's speculation that the information "seemed" to have been "garnered from the three."  Id. In fact, Cobb testified that he told Whyte that all of the members, including Whyte, were "under the microscope" because of ongoing contract negotiations, and that Whyte needed to "be professional" and "get the job done."  Crispin Decl., Ex. G, p. 4.  Such evidence does not support an inference of discrimination.

Whyte also contends that individual defendants interjected themselves in "his private life," while the romantic endeavors of others were ignored and not the subject of gossip.  Whyte Decl., p. 3.  Presumably, Whyte refers to the extra-marital affair he admittedly had with a female hospital staff member during his tenure with Praestantia.  Plaintiffs provide no evidence that defendants meddled in his personal life, other than Cobb's testimony that he approached Whyte about his marital troubles and believed Whyte's extramarital affair with a hospital staffer "was not the image that Praestantia wanted to promote at a small

community hospital." Crispin Decl., Ex. G, p. 5. Such evidence does not create an inference of racial discrimination.

Whyte also asserts that Bergen treated him differently from other Praestantia members. Whyte contends that Bergen directed him to stop calling patients and/or sending patients flowers the night before a procedure, because no physician or other Praestantia member did so. Even if true, such evidence fails to support an inference that Whyte was singled out or treated differently from other Praestantia members. Further, the record reflects that this issue was discussed at several Praestantia meetings and that defendants preferred consensus and a consistent policy on this issue. Second Bergen Decl., pp. 4, 6, 8 and Ex. A. Defendants nonetheless later learned that, contrary to the members' agreement, Whyte continued to send flowers to patients, even though the patients' physicians found it inappropriate. Bergen Decl., p. 14; Crispin Decl., Ex. E, p. 5.

Whyte also states that, unlike other Praestantia members, Bergen "controlled" his communications and criticized his retention of a Texas cell phone number. Whyte Decl., p. 4. However, plaintiffs produce no evidence of Bergen's "control" over Whyte's communications, and the documents submitted reflect that hospital staff could not contact Whyte via his Texas cell number and that Whyte was reminded to change his number to facilitate such communication. Second Bergen Decl., Ex. A, p. 2. Whyte fails to

13 - OPINION AND ORDER

present evidence that Bergen's concern over Whyte's communication constitutes disparate treatment.

Finally, Whyte asserts that Bergen scheduled Praestantia meetings on short notice and required attendance of Praestantia members at such meetings and at meetings of the Oregon Association of Nurse Anesthetists (ORANA) and other organizations. Whyte Decl., p. 4. Plaintiffs do not argue or provide evidence that Bergen singled Whyte out by mandating attendance at LLC meetings or encouraging attendance at ORANA or other meetings. In fact, Whyte testified that Bergen wanted all Praestantia members to attend such meetings. Kelley Decl., Ex. A (Whyte Depo., p. 30); Second Bergen Decl., Ex. A, pp. 2, 5. Whyte also admitted that he missed more ORANA meetings than he attended, even though he was on the ORANA Board. Kelley Decl., Ex. A (Whyte Depo., pp. 29-30).

Given the paucity of "concrete, relevant particulars" and Whyte's contradictory deposition testimony, I find that plaintiffs fail to establish a prima facie case of race discrimination. Forsberg, 840 F.2d at 1419.

Moreover, even if plaintiffs established a prima facie case, defendants present evidence of legitimate, non-discriminatory reasons for Whyte PC's removal from Praestantia, including reports of clinical performance concerns, declining professionalism and complaints of sexual misconduct. Bergen Decl., pp. 6-14; Crispin Decl., Ex. E, pp. 2-6 (Bergen's testimony describing complaints

from scrub nurse on behalf of surgeon regarding Whyte's excessive
telephone use during surgery; from a physician regarding Whyte's
inappropriate sexual comments; and from others regarding two
complaints of additional, inappropriate sexual comments); id. Ex.
G, p. 4 (Cobb testimony regarding complaints of sexual misconduct
by Whyte).

Further, plaintiffs present no specific and substantial
evidence suggesting that Bergen's reasons were pretextual.   "To
show pretext using circumstantial evidence, a plaintiff must put
forward specific and substantial evidence challenging the
credibility of the employer's motives." Vasquez v. County of Los
Angeles, 349 F.3d 634, 642 (9th Cir. 2003); accord Coghlan v.
American Seafoods Co. LLC., 413 F.3d 1090, 1085 (9th Cir. 2005)
("But when the plaintiff relies on circumstantial evidence, that
evidence must be 'specific and substantial' to defeat the
employer's motion for summary judgment.").

Plaintiffs contend that at the time of his decision, Bergen
was not aware of the numerous sexual harassment allegations against
Whyte that defendants cite in their supporting memorandum.
However, as noted above, plaintiffs do not dispute that Bergen was
aware of at least three sexual misconduct complaints, along with
other complaints of Whyte's behavior and clinical performance.
Plaintiffs' Opposition, pp. 23-24; Crispin Decl., Ex. E, pp. 2-6,
Ex. G, p. 4; Bergen Decl., pp. 6-8, 10-12.   Although plaintiffs

contest the factual accuracy and/or seriousness of the underlying events that led to the complaints, plaintiffs do not dispute that Bergen received such complaints against Whyte or otherwise had knowledge of such complaints.    In judging whether proffered legitimate non-discriminatory reasons are "'false,' it is not important whether they were *objectively* false . . . .    Rather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless.'"  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002) (quoting <u>Johnson v. Nordstrom</u>, Inc., 260 F.3d 727, 733-34 (7th Cir. 2001)) (emphasis in original).[4]

Plaintiffs also assert that Bergen did not advise him of the specific reasons for his removal, other than to assert performance and professionalism concerns and declining credibility.    Kelley

---

[4]Defendants also present after-acquired evidence of additional complaints and reports of sexual harassment and other conduct, including back and shoulder rubs, that made female hospital employees uncomfortable.  <u>See</u> Bergen Decl., pp. 16-17; Kelley Decl., Exs. B-F; Crispin Decl., Exs. E, H, I, J.  Not only does this evidence lend support to Bergen's stated reasons for Whyte's removal, no reasonable trier of fact could find that Bergen would not have removed Whyte from Praestantia had he known the extent of the complaints, given their number and severity, the hospital policy against sexual harassment, and Bergen's discretionary authority to remove members.  <u>Rivera v. NIBCO, Inc.</u>, 364 F.3d 1057, 1070-71 (9th Cir. 2004) (after- acquired evidence doctrine precludes or limits remedies for wrongful termination of employment "if the employer later 'discovers' evidence of wrongdoing that would have led to the employee's termination had the employer known of the misconduct"); <u>see also</u> <u>O'Day v. McDonnell Douglas Helicopter Co.</u>, 79 F.3d 756, 762 (9th Cir. 1996) (statement of employer corroborated by company "common sense").

16 - OPINION AND ORDER

Decl., Ex. A (Whyte Depo., p. 192); Second Kelley Decl., Ex. A (Whyte Depo., p. 206). Absent <u>any</u> evidence of racial animus, however, I cannot infer discrimination based solely on defendants' alleged reluctance to provide specific reasons for plaintiffs' removal, particularly when the Amended Operating Agreement granted Bergen the sole and discretionary authority to take such action, and Bergen was the person who both recruited and removed Whyte within a relatively short period of time. See <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267, 270-71 (9th Cir. 1996) ("[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.").

In sum, plaintiffs present nothing more than conclusory assertions that defendants must have been motivated by discriminatory intent, assertions that are insufficient to survive summary judgment. <u>Collings v. Longview Fibre Co.</u>, 63 F.3d 828, 834 (9th Cir. 1995) (conclusory assertions that employer "must have had a discriminatory intent . . . without other facts to substantiate that claim, are insufficient to avoid summary judgment"). Accordingly, defendants' motion is granted as to plaintiffs' federal and state claims of race discrimination.[5]

---

[5]Defendants also argued that plaintiffs' state law claim under Or. Rev. Stat. § 659A.030 must fail because Praestantia was not Whyte's employer. While I agree that the evidence does not

B.  Intentional Interference With Economic Relations

     Plaintiffs allege that defendants intentionally interfered with plaintiffs' contractual relationships by removing Whyte PC from Praestantia for improper purposes and interfering with his economic relationship with Providence Newberg Hospital.  Plaintiffs also allege interference with prospective economic relations based on Bergen's refusal to provide information to Providence St. Vincent Medical Center regarding Whyte's credentialing application, in retaliation for Whyte's assertion of discrimination.

     Under Oregon law, a party may recover damages for wrongful interference with a contract or prospective economic advantage. Wampler v. Palmerton, 250 Or. 65, 72-73, 439 P.2d 601 (1968).  The tort protects "the interest of the individual in the security and integrity of the contractual relations into which he has entered." Id. at 73, 439 P.2d 601.  To establish intentional interference, plaintiffs must show the following elements:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841 (1995).  For

support an employment relationship, the failure to establish a
prima facie case of race discrimination precludes this claim.
Bergen Decl., pp. 4-5 and Ex. B; Kelley Decl., Ex. A (Whyte
Depo., pp. 125-27).

the reasons explained above, plaintiffs fail to establish that defendants removed Whyte PC from Praestantia membership based on discriminatory purposes.   Plaintiffs also allege defendants' removed Whyte PC from Praestantia to secure for themselves all of the economic benefit of providing anesthesia services to Providence Newberg.   However, plaintiffs again fail to provide evidence to support this allegation, other than Whyte's conclusory assertions.

For the same reason, plaintiffs fail to show intentional interference with prospective economic relations.  Although Bergen admitted that he did not complete a work history questionnaire regarding Whyte, Bergen stated that he received a voicemail message from a Providence St. Vincent physician in regard to Whyte.   The physician did explain the reason for the call, and Bergen contacted the credentialing office secretary at Providence St. Vincent for further direction.   Crispin Decl., Ex. E, pp. 9-10.   At her direction, Bergen provided the dates of Whyte's service and understood that no further information was required.   Id.   The record also reflects that Bergen sent an email with Whyte's dates of service to the requesting physician and explained that he could provide no further information on the advice of counsel, given that plaintiffs had filed a compliant against defendants at that time. Crispin Decl., Ex. K; see also id. Ex. E, p. 10.

Plaintiffs provide no evidence to rebut Bergen's testimony or to show that Bergen's actions actually interfered with plaintiffs'

19 - OPINION AND ORDER

prospective economic relationship with Providence St. Vincent, or that he suffered damages as a result. Therefore, summary judgment is appropriate on this claim.

C.  Covenant of Good Faith and Fair Dealing

Next, plaintiffs allege that Praestantia and the defendant LLCs breached the covenant duty of good faith and fair dealing by removing Whyte PC from Praestantia membership. Oregon law implies a duty of good faith and fair dealing in the performance of every contract consistent with the objectively reasonable contractual expectations of the parties. See Uptown Heights Assoc. Ltd. Partnership v. Seafirst Corp., 320 Or. 638, 644-645, 891 P.2d 639 (1995). Here, Praestantia's Amended Operating Agreement granted Bergen sole discretion in removing any member from the LLC, and plaintiffs fail to present evidence that Bergen was motivated by racial animus or other improper motive contrary to the reasonable expectations of the parties. Bergen Decl., Ex. B. Therefore, this claim cannot survive summary judgment.

D.  Defamation

Finally, plaintiffs allege defamation against Bergen and Wray. Plaintiffs contend that Bergen and Wray represented to a physician that Whyte was terminated from Praestantia due to sexual harassment or "words to such effect." Complaint, p. 10. Plaintiffs also assert that Wray represented to the President of ORANA that Whyte was "not fit" to represent ORANA.

20 - OPINION AND ORDER

"The elements of a claim for defamation are: (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory per se and therefore gives rise to presumptive special harm." Nat'l Union Fire Ins. Co. v. Starplex Corp., 220 Or. App. 560, 584, 188 P.3d 332 (2008). To be actionable, the communication must be both false and defamatory. Reesman v. Highfill, 327 Or. 597, 603, 965 P.2d 1030 (1998). A defamatory statement is one that subjects another to hatred, contempt, or ridicule; tends to diminish the esteem, respect, goodwill, or confidence in which the other is held; or excites adverse, derogatory or unpleasant feelings or opinions. Id. Generally, a statement of opinion is not actionable unless the recipient could reasonably conclude that the statement was based on undisclosed defamatory facts. Hickey v. Settlemier, 141 Or. App. 103, 110, 917 P.2d 44 (1996).

Here, plaintiffs present no evidence that Bergen or Wray told a third party that Whyte was removed due to sexual harassment. Further, plaintiffs do not dispute that Bergen received at least three complaints of poor performance and sexual harassment by Whyte. Crispin Decl., Ex. E, pp. 2-6; Bergen Decl., pp. 6-14; Crispin Decl., Ex. E, pp. 2-6. Given that plaintiffs fail to show that Bergen's reliance such complaints in removing Whyte PC was pretextual, Bergen's statement is true, even if Whyte denies that he engaged in sexual harassment.

Further, I find that Wray's admitted statement that Whyte was not the "best candidate" to represent ORANA at a mid-year assembly, because of Whyte's absence at board meetings, is one of opinion based on known facts and not actionable.   Wray Decl., pp. 2-3. Accordingly, defendants are entitled to summary judgment.

<u>CONCLUSION</u>

Defendants' Motion for Summary Judgment (doc. 34) is GRANTED. IT IS SO ORDERED.

Dated this 18th day of December, 2009.

Ann Aiken
Chief United States District Judge

22 - OPINION AND ORDER